# Nabors v. The State.

*Indictment for Murder.*

120  323
131,    7

1. *Trial and its incidents; what not an unwarranted separation of jury.* During the progress of a trial under an indictment for murder, the jury in charge of a bailiff was excused by the court to go into retirement. In a short while eleven of the jurors in charge of the bailiff returned to the court room, resuming their places in the jury box, the twelfth juror remaining in the place of retirement, accompanied by another bailiff of the court. The place of retirement was in full view of the judge presiding, and the doors and windows on either side were open. In a few minutes the twelfth juror returned and resumed his seat in the jury box. He had no communication with any person and saw no person in the place of retirement except the bailiff. *Held:* That this was not an unwarranted separation of the jury, which could injure or prejudice the defendant.

2. *Homicide; charges ignoring element of self-defense erroneous.*—On a trial under an indictment for murder, where the evidence for the State tended to show a deliberate and unjustifiable homicide by the defendant of the deceased, and the defendant sets up the plea of self-defense, charges to the jury, requested by the defendant, which invoke the doctrine of self-defense, but ignore the question of fault on the part of the defendant in bringing on the difficulty and omit to hypothesize that at the time of the fatal blow there existed an imperious necessity, real or apparent, to strike in order to save his life or himself from great bodily harm, and that he had no reasonable mode of escape without increasing his own peril, or putting himself to a disadvantage under which he did not already labor, are erroneous and properly refused.

3. *Same; self-defense.*—The mere belief of the existence of great peril will not justify killing in self-defense, but the appearances must be such as to create a reasonable apprehension and produce an honest belief in the slayer's mind of the existence of imminent peril or impending danger to his life, or of great bodily harm.

4. *Indictment for murder; when charge requiring premeditation to au_thorize conviction erroneous* —On a trial, an indictment which charges the defendant with having "unlawfully and with malice aforethought killed" the deceased, while charging in terms murder in the second degree is, under the statute (Cr. Code of 1896, § 4854), a sufficient indictment for murder in either de-

gree; and on a trial under such an indictment, a charge which instructs the jury that "Before they can find the defendant guilty as charged, they must be convinced by the evidence beyond a reasonable doubt and to a moral certainty that he killed the deceased with premeditation and malice aforethought," is bad in the use of the word *premeditation*; since premeditation is not an essential element of murder in the second degree, as defined by the statute, and the indictment charges murder in the second, as well as in the first, degree.

5. *Homicide; charge as to self-defense; reasonably free from fault insufficient.*—On a trial under an indictment for murder, a charge invoking the doctrine of self-defense, which, in reference to freedom from fault in bringing on the difficulty only requires that he should be "*reasonably* free from fault" is erroneous; the law admitting of no qualification of this essential element of self-defense.

6. *Charge to the jury; when abstract in hypothesizing an impeachment by proving contradictory statements.*—On a trial in a criminal case, when there was no attempt to impeach any witness examined in the case by proving contradictory statements made by him, a charge which hypothesizes an impeachment on that ground is abstract, and for that reason properly refused.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. GEORGE E. BREWER.

The appellant, Jasper Nabors, was tried under the following indictment: "The grand jury of said county charge that before the finding of this indictment that Jasper Nabors, alias Jap Nabors, unlawfully and with malice aforethought, killed A. B. Payne, alias Bent Payne, by shooting him with a gun.

"The grand jury of said county further charge that before the finding of this indictment Jasper Nabors, alias Jap Nabors, unlawfully and with malice aforethought killed A. B. Payne, alias Bent Payne, by shooting him with a pistol, against the peace and dignity of the State of Alabama."

The defendant was convicted of murder in the second degree, and sentenced to the penitentiary for twenty-five years. The facts of the case are sufficiently stated in the opinion.

The defendant requested the court to give to the jury the following charges, and separately excepted to the court's refusal to give each of them as asked: (a.)

"The court charges the jury that if they believe from the evidence that the defendant at the time he fired had reasonable grounds for believing that Bent Payne had a felonious design against him, and under that supposition he killed the deceased, they should not find the defendant guilty of murder." (b.) "The court charges the jury that if they believe from the evidence that the defendant was free from bringing on the difficulty at the time of the killing of the deceased, and that the deceased attacked the defendant with what the defendant thought to be a gun, then the defendant was not bound to retreat, if the appearances were such as to cause him to believe that by retreating he would increase the danger to his life." (c.) "The court charges the jury that if they believe from the evidence that the defendant was free from fault in bringing on the difficulty, and that at the time of firing the fatal shot, defendant had reasonable cause to believe the existence of facts which would justify a killing, they should find him not guilty." (d.) "The court charges the jury that before they can find the defendant guilty as charged, they must be convinced by the evidence beyond a reasonable doubt and to a moral certainty, that he killed the deceased with premeditation and malice aforethought." (e.) "I charge you, gentlemen of the jury, one of the elements of self-defense is that the defendant must be reasonably free from fault in bringing on the difficulty, and I also charge you that the burden of proof is not on the defendant to prove this element." (f.) "The court charges the jury that witnesses may be impeached by proving contradictory statements or by proving that their characters in the community where they live are bad for truth and veracity; and the court charges the jury that when a witness has been impeached in any way, the law authorizes that they may disregard said witness' testimony." (g.) "The court charges the jury that if they 'believe' from the evidence that at the time of the shooting of the deceased the defendant was going along the public road leading to his father's house and the deceased 'come' out of the postoffice and attacked the defendant with something that the defendant 'believed' to be a gun, then the defendant had a right to act on appearances and defend himself, and if they further 'believe' that he did noth-

ing more than to 'defend' himself, they must find the defendant not guilty." (h.) "The court charges the jury that if they believe from all the evidence that after defendant got the gun from Rhodes Alston's house he started home, and that when he got near deceased's store, Bent Payne came out of said store with a gun or something that looked like a gun to defendant, and if they further believe from the evidence that defendant, acting under the reasonable apprehension of *loosing* his life or of receiving great bodily harm, fired the fatal shot, then they should find the defendant not guilty." (i.) "The court charges the jury that if they believe from the evidence, that the defendant's life was threatened, and that he went to Rhodes Alston's house and got his gun to protect his life, and that he started to his father's house along the public road which leads near by the deceased's place of business, and that just as the defendant was passing the place of business of deceased he came out and attacked the defendant with what the defendant thought to be a gun, then the defendant had a right to act on appearances and defend himself."

J. R. BEAVERS, for appellant.—The court erred in refusing to give the charge designated (d.)—Cr. Code, p. 333, Form 63 ; *Mitchell v. State*, 60 Ala. 32.

CHARLES G. BROWN, Attorney-General, for the State.—There was no unwarranted separation of the jury.—*Butler v. State*, 72 Ala. 179.

The court did not err in refusing the charges requested by the defendant. There must be an imperious necessity to prevent the commission of an offense dangerous to life or limb, or such appearance of necessity as would impress a reasonable man of its necessity. There must be an honest belief based on reasonable appearances.—*Commander v. State*, 60 Ala. 3 ; *Oliver v. State*, 17 Ala. 587 ; *Harrison v. State*, 24 Ala. 67 ; *Lewis v. State*, 51 Ala. 1 ; *Rogers v. State*, 62 Ala. 170 ; *Storey v. State*, 71 Ala. 337 ; *Jackson v. State*, 78 Ala. 471 ; *Prior v. State*, 77 Ala. 56 ; *Keith v. State*, 97 Ala. 32 ; *Roden v. State*, 97 Ala. 54 ; *Miller v. State*, 107 Ala. 58.

DOWDELL, J.—The defendant was indicted and tried in the circuit court of Shelby county on a charge of murder. During the progress of the trial the jury, in charge of a bailiff of the court and by permission of the court, retired to a water closet, which was located on the same floor with the court room, and adjoining the vestibule to the court room ; the closet being entered by a door opening into the vestibule. In a short while eleven of the jurors in charge of the bailiff returned to the court room resuming their places in the jury box. The twelfth juror remained alone in the closet, no other person being within the closet during the stay of this juror in the same. While said juror remained in the closet another bailiff of the court remained in the vestibule, the only access to the closet being the door which opened into the vestibule. The vestibule was in front of the bench of the presiding judge, and the door leading from the court room into the vestibule being open, together with the windows on either side of the door, afforded a view of the vestibule to the judge. This twelfth juror in a short while afterwards came directly from the closet through the vestibule into the court room, resuming his seat in the jury box. He had no communication with any person, and saw no person in the vestibule except the officer of the court. This was not an unwarranted separation, nor was it at all calculated to injure or prejudice the defendant.—*Butler v. State*, 72 Ala. 179.

The testimony offered by the State tended to show a deliberate and unprovoked killing by the defendant of the deceased. The defendant set up the plea of self-defense, and testified in his own behalf along that line. He also introduced evidence tending to impeach several of the State's witnesses on their bad character for truth and veracity. The State in rebuttal of this impeaching testimony introduced evidence tending to sustain the character of one of the witnesses sought to be impeached.

The court, after giving a number of charges requested by the defendant, refused to give the written charges requested by the defendant and designated as a, b, c, d, e, f, g, h, and i, and which we are now to consider.

The charges designated a, b, c, g, h, and i, based on the theory of self-defense, may well be treated and disposed of together. While some of them have more vices than others, each and every one of them is afflicted

with the common infirmity of omitting an essential element of the law of self-defense. In a trial for homicide where the defendant invokes the doctrine of self-defense, the defendant must himself be free from fault in bringing on the difficulty; and this being so, it is incumbent upon him to show, (1) that at the time of the fatal blow there existed an imperious necessity, real or apparent, to strike in order to save his own life or himself from great bodily harm; and (2) that he had no reasonable mode of escape without increasing his own peril, or putting himself at a disadvantage under which he did not already labor. Such necessity does not exist unless the apparent danger be such as would create a reasonable apprehension and produce in the mind of the defendant an honest belief of existence.

Such being the law where there is evidence tending to show an unjustifiable killing, a charge to the jury at the request of the defendant predicated upon this plea, which omits to hypothesize these elements of self-defense, or any one of them, containing an instruction to acquit, should not be given by the court. Testing the written charges a, b, c, g, h, and i, by the foregoing standard, they were properly refused.—*Roden v. State*, 97 Ala. 54; *Rutledge v. State*, 88 Ala. 85; *Zaner v. State*, 90 Ala. 651; *Waller v. State*, 89 Ala. 79; *Naugher v. State*, 105 Ala. 26. While charges b and i do not contain instructions to acquit, they are offensive to the law laid down in other respects. The mere "thought" or imagination in the mind of the defendant, though arising from appearances, of the existence of imminent peril to himself will not justify the killing of his adversary. As said above, the appearances must be such as to create a reasonable apprehension and produce an honest belief in the defendant's mind of the existence of imminent peril or impending danger to his life or of great bodily harm.

The indictment is in the form given in the Code. Crim. Code of 1896, p. 333, Form 63. The statute defines murder in the first and second degrees.—Code, 1896, § 4854. This section refers to Form 63 as the form for indictment. The indictment in terms charges murder in the second degree under the law. The only conclusion, therefore, is that, while it in terms charges murder in the second degree, the statute makes it a suf-

[King v. The State.]

ficient indictment for murder in either degree. The indictment then charging murder in the second as well as in the first degree, the charge designated (d), and requested by the defendant, was bad in the use of the word "premeditation," this not being an essential ingredient of murder in the second degree as defined by the statute.

Charge (e) does not state the law of self-defense correctly in that it qualifies the freedom from fault in bringing on the difficulty.—*Henson v. State*, 112 Ala. 41 ; *McQueen v. State*, 103 Ala. 12 ; *Johnson v. State*, 102 Ala. 1.

As there was no attempt to impeach any witness in the case by proving contradictory statements, charge (f), in hypothesizing an impeachment on that ground, was to that extent abstract, and for that reason was properly refused.

We find no error in the record, and the judgment of the circuit court is affirmed.